NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250443-U

NO. 4-25-0443

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 7, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ROBERT WILMAN WARE, | ) | No. 20CF1313 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Amy L. McFarland, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, finding the trial court substantially complied with
Illinois Supreme Court Rule 401 (eff. July 1, 1984) and defendant failed to
establish a constitutional violation.

¶ 2   Following a jury trial, defendant, Robert Wilman Ware, was found guilty of
aggravated driving under the influence (DUI) (625 ILCS 5/11-501(a), (d)(1)(A) (West 2020)),
aggravated driving with a revoked license (*id.* § 6-303(a), (d-2)), and two counts of endangering
the life or health of a child (720 ILCS 5/12C-5(a)(1) (West 2020)). He was sentenced to a total of
four years' imprisonment.

¶ 3   On appeal, defendant contends the trial court failed to properly admonish him
under Illinois Supreme Court Rule 401 (eff. July 1, 1984) before he represented himself *pro se*
for a short period during pretrial proceedings. Defendant also raises a separate constitutional
claim related to his waiver of counsel. He asks this court to reverse his conviction and remand

for a new trial. We affirm.

¶ 4                                          I. BACKGROUND

¶ 5            Defendant was arrested in November 2020 after police stopped him for driving

the wrong way down a one-way street in Bloomington, Illinois, and found him to be intoxicated

while also driving on a revoked license with minor children in the vehicle. Defendant was

charged by information with aggravated DUI (625 ILCS 5/11-501(a), (d)(1)(A) (West 2020))

(count I), aggravated driving with a revoked license (*id.* § 6-303(a), (d-2)) (count II), obstruction

of justice (720 ILCS 5/31-4(a)(1) (West 2020)) (count III), and two counts of endangering the

life or health of a child (*id.* § 12C-5(a)(1) (West 2020)) (counts IV and V). Counts I through III

were superseded by a grand jury bill of indictment. At his arraignment on December 18, 2020, a

public defender represented defendant, and he pleaded not guilty. The trial court handed counsel

two copies of the three-count bill of indictment, and defendant waived a formal reading of the

charges. The court entered an order the same day reflecting these matters. Defense counsel then

filed a motion to reduce bond.

¶ 6            At the next hearing date, December 30, 2020, defendant moved to proceed *pro se*.

The trial court ascertained defendant was 44 years old and some credits shy of a mechanical

engineering degree. He was previously incarcerated until 2017 and had represented himself

*pro se* posttrial in a prior criminal case. See *People v. Ware*, 2020 IL App (4th) 180138-U, ¶¶ 14,

28, 31 (agreeing with defendant's posttrial claim, raised *pro se*, it was error to deny a self-

defense instruction and, accordingly, reversing and remanding for a new trial). The court told

defendant he had an absolute right to an attorney and warned him at length he would be bound

by the same rules as an attorney, including evidentiary and technical trial rules. The court

delineated the disadvantages of proceeding *pro se* against an experienced prosecutor and added

defendant would not be granted any special consideration. Defendant stated he understood and verified he wished to represent himself. Following this colloquy, the court found defendant was "sufficiently competent," "intelligent enough," and understood "the system sufficiently" to represent himself.

¶ 7 The public defender withdrew and then presented defendant with a copy of the pretrial services bond report, which included a list of all the current charges against defendant. The trial court provided defendant an opportunity to review the report, and defendant proceeded *pro se* on counsel's already filed motion to reduce bond. In opposing the motion, the State read into the record the probable cause statement describing the facts underlying the charged offenses and noted defendant's two prior DUIs. Defendant's motion was denied due to the nature of the offense and defendant's prior offenses, including, as the State reported, 13 "failure to appear" warrants in McLean County.

¶ 8 In January and February 2021, defendant filed six *pro se* motions, including motions to dismiss, suppress, and retain a private investigator. At a subsequent hearing on February 19, 2021, before another judge, defendant stated, previously, he had not been admonished as to the charges or penalties. He noted it was a "requirement" under Rule 401. The trial court responded the record indicated defendant was fully admonished, but defendant insisted "that never happened."

¶ 9 Accordingly, the trial court read aloud counts I through V. The court stated count I was a third offense and Class 2 felony carrying a prison term between three and seven years, followed by two years' mandatory supervised release (MSR). Count II was also a third offense. Counts II and III were Class 4 felonies carrying prison terms between one and three years, followed by one year of MSR, and both carried an extended term of three to six years based on

- 3 -

defendant's prior felonies. Counts IV and V were Class A misdemeanors punishable by up to 364 days' jail time. The court added there was a potential fine and possible "continuing order" of probation or conditional discharge for up to 48 months (count I), 30 months (counts II and III), and 24 months (counts IV and V). Defendant acknowledged he "was *** given" the indictments (counts I-III) at his arraignment and had the information (counts IV and V). The court further informed defendant he had traffic citations associated with his case, and defendant asked clarifying questions regarding the charges.

¶ 10        During these admonishments, the trial court did not inform defendant his sentences could be served consecutively, although it was a possibility. See 730 ILCS 5/5-4.5-35(g), 5-8-4(c)(1) (West 2020). Similarly, count I stated this was defendant's third DUI offense, making it a Class 2 probationable felony (625 ILCS 5/11-501(d)(2)(B) (West 2020); 730 ILCS 5/5-4.5-35, 5-1-18 (West 2020)), but sentencing later revealed this to be defendant's fourth DUI. While still a Class 2 offense, defendant's prior convictions made it nonprobationable, meaning defendant could not be released from prison while still serving his sentence. See 625 ILCS 5/11-501(d)(2)(C) (West 2020); 730 ILCS 5/5-4.5-35, 5-1-18 (West 2020).

¶ 11        Immediately after the Rule 401 admonishments, defendant attempted to present the motion to dismiss he had filed in January 2021. A back-and-forth colloquy ensued as to what was permissible for a *pro se* litigant. Defendant asked the trial court to take judicial notice of the grand jury transcript, then argued his motion to dismiss, claiming the State improperly submitted evidence to the grand jury and also excluded exculpatory evidence. Specifically, defendant claimed his refusal to submit to blood/urine testing was inadmissible, and therefore, should have been excluded. The police body camera video, however, was exculpatory and should have been admitted before the grand jury. Defendant's oral argument on his motion to dismiss nonetheless

- 4 -

included references to video evidence he had not admitted. Following the State's objection, the court continued the matter to give defendant the opportunity to obtain the video and call the police officer witness. At subsequent status hearings, it was announced defendant was determining which of his motions (including three different motions to dismiss) he wanted set for an "actual hearing." Around March 2021, defendant posted bond, and after being transferred to another county on a separate case, he was eventually released.

¶ 12      On the date motions were to be heard, May 19, 2021, defendant announced he had retained private counsel, and the matter again was continued. Over the course of several years, the case was set for trial multiple times, and two separate private attorneys appeared on defendant's behalf. Neither attorney adopted defendant's *pro se* motions to dismiss. With the aid of counsel, in January 2023, defendant entered into plea negotiations without coming to an agreement with the State. Both attorneys ultimately withdrew, one citing "irreconcilable differences" and the other a "material breakdown" with defendant. On March 15, 2023, the final pretrial date, as second counsel sought to withdraw, defendant announced he was "not participating" "anymore with this case at all." On March 20, 2023, the cause was called for a jury trial, but defendant failed to appear, resulting in a bench warrant issuing. The record indicates, in July 2023, defendant was arrested for driving on a revoked license, and he pleaded guilty to the offense in October 2023, after which he was again placed in custody.

¶ 13      At the subsequent hearing in the present case, October 25, 2023, defendant appeared before a third judge and again requested to proceed *pro se*, referring to the 10 to 15 motions he had filed. The cause was continued so defendant could review the motions he previously had filed in January and early February 2021. On January 12, 2024, defendant argued his motions for prosecutorial misconduct, to quash arrest and suppress evidence, and to dismiss.

As to the latter, he claimed double jeopardy precluded his prosecution because the charges had been dismissed. The State clarified the grand jury indictment had merely superseded the information, and the charges remained pending. Defendant also reargued his earlier motion to dismiss. He complained about the prosecutor's argument presented at his bond hearing and claimed the body camera video was "a lie." The trial court denied the motions. Notwithstanding the foregoing, and following the court's admonitions about the disadvantages of proceeding *pro se*, defendant elected to be represented by a public defender for trial, even though he felt "very capable." Defendant next appeared with his appointed counsel, and the parties and court concluded there were no outstanding motions.

¶ 14        The cause proceeded to a jury trial on June 17, 2024. Before trial, the trial court again admonished defendant of the charges and the possible prison terms. The court added count I had an extended term of 7 to 14 years, if eligible, and up to 4 years of probation, along with mandatory jail time, community service, and a fine; count II carried mandatory jail time and up to 2½ years' probation. The court noted count III had been dismissed. A traffic offense of driving the wrong direction down a one-way street was subject to conviction, court supervision, or conditional discharge for up to six months, also with a potential fine. Defendant stated he understood the potential minimum and maximum penalties.

¶ 15        Pursuant to the trial court's queries, the State noted a plea offer had been made. Defendant stated he had adequate time to discuss the plea with his attorney but rejected the offer because it was "just too much time." Defendant verified he wished to proceed to trial.

¶ 16        At trial, Bloomington police officer Cody Followell testified he was on patrol on November 29, 2020, when he observed defendant fail to properly signal a turn and then accelerate the wrong way down a one-way street. Officer Followell effectuated a traffic stop.

While Officer Followell was still inside his patrol vehicle, communicating with dispatch, defendant exited his own vehicle. Officer Followell told defendant to stay in his vehicle multiple times, but defendant refused, choosing to pace around the area. Despite commands to keep his hands visible, defendant would drop them. Officer Followell again told defendant to "stop and to keep his hands up" and face him. Defendant, instead, walked backwards toward Officer Followell, who tried to stand defendant up three or four times while also placing him in handcuffs. Defendant stated, "I am too f*** up." In response to the officer's questions, defendant's speech was thick, slurred, and very difficult to understand. His eyes were glassy and bloodshot, and he had a "blank stare," all of which Officer Followell recognized as signs of intoxication based on his police training.

¶ 17    On checking the registration, Officer Followell learned defendant's license was revoked and arrested him. Officer Followell testified on redirect, when defendant was asked how much alcohol he had consumed, defendant responded he "shouldn't be driving." No field sobriety tests were given because defendant could not stand up. Trial evidence showed defendant's two 15-year-old children, along with another adult, were also in his vehicle when it was stopped.

¶ 18    Bloomington police officer Bryan McCall, who was certified in the investigation of DUI offenses and alcohol-related traffic stops, testified he responded to Officer Followell's call for back-up. Officer McCall helped pick defendant up off the ground and place him in the police car. He smelled alcohol on defendant's breath, which, in addition to defendant's speech and later aggression, were signs of intoxication.

¶ 19    Officer Followell's body camera video was entered into evidence and published to the jury, as was body camera video from the hospital and jail, where defendant was

transported. These videos are consistent with the officers' testimony. At the hospital, defendant was agitated. He yelled and threatened officers, stating he would "beat [Officer Followell] half dead" and "stomp him," as defendant refused blood, breath, and urine tests. The State also introduced a certified driving abstract demonstrating defendant's license had been revoked on the day in question.

¶ 20 The State rested. Defendant rested without presenting any evidence. As set forth, the jury found defendant guilty of aggravated DUI, aggravated driving with a revoked license, and endangering the life or health of two children, as well as a traffic offense of driving in the wrong direction on a one-way roadway. (We note the traffic offense is not part of this appeal).

¶ 21 The cause proceeded to sentencing, where, as stated, it was discovered defendant had not just the two prior DUI offenses in Illinois, but a third from Iowa, making this his fourth DUI. The parties argued over whether defendant should have been informed previously this fourth offense rendered the aggravated DUI nonprobationable. The trial court ultimately found defendant was subject to the same class of offense (Class 2) in any event. The law required the recognition of his criminal history, which included the fourth DUI offense. Per defendant's presentence investigation report, he tallied 6 prior felonies, 13 misdemeanors, and 22 traffic offenses. Following argument, the court sentenced defendant to four years in prison for the aggravated DUI and a concurrent two-year term for the aggravated driving with a revoked license. The child endangerment charges were considered time served.

¶ 22 Defendant filed a motion to reconsider the sentence. He claimed it was excessive and reiterated the trial court should have recognized this DUI as his third offense, subjecting him to probation, based on the indictment and the court's pretrial admonishments. He also filed a motion for a new trial, arguing the State failed to prove him guilty of the aggravated DUI beyond

a reasonable doubt and the jury's findings were against the manifest weight of the evidence. The court denied the motions, and this appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24          Defendant now challenges the trial court's Rule 401 admonishments before he proceeded *pro se*. An accused has a right to self-representation which, like the right to be represented by counsel, is fundamental. *People v. Marcum*, 2024 IL 128687, ¶ 43. Before accepting waiver of counsel, Rule 401(a) requires a trial court in open court to inform a defendant facing imprisonment of (1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law, including possible penalties from prior convictions or consecutive sentences; and (3) the right to counsel. Ill. S. Ct. R. 401(a) (eff. July 1, 1984). A defendant also must exhibit an understanding of these matters. *Id.* A trial court need only substantially comply with the rule. *People v. Ratliff*, 2024 IL 129356, ¶ 44. The record must show the waiver was made knowingly and voluntarily and the admonishment did not prejudice the defendant's rights. *People v. Haynes*, 174 Ill. 2d 204, 236 (1996); see *Marcum*, 2024 IL 128687, ¶ 46. In analyzing an alleged Rule 401 violation, we must consider the entire record based on the circumstances of the case. *People v. Simpson*, 172 Ill. 2d 117, 133-34 (1996).

¶ 25          Defendant in the main contends the trial court failed to properly inform him of the penalties, thus violating Rule 401(a)(2) and rendering his waiver of counsel invalid. Specifically, he contends the court failed to admonish him his sentences could be consecutive and his aggravated DUI was not probationable. He maintains his waiver was not knowing and intelligent. Accordingly, he requests we reverse his conviction and remand for a new trial. The State, initially, responds defendant failed to preserve this claim for appeal.

¶ 26          To preserve an issue for review, both a trial objection and a written posttrial

motion raising the issue are necessary. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Here, defendant's posttrial motion attacking the judgment made no mention of Rule 401, the trial court's substantial compliance, defendant's waiver (whether voluntary or knowing), prejudice, or if defendant was *pro se* at a critical stage of the case. Defendant argues the parties' written and oral arguments as to whether the DUI was his fourth nonprobationable offense and whether the indictment apprised defendant of the charged crime (see 725 ILCS 5/111-3 (West 2020)) sufficiently preserved the issue. We reject defendant's attempt to conflate the issues. Notwithstanding defendant's protestations to the contrary, he forfeited his claim of error. See *People v. Sebby*, 2017 IL 119445, ¶ 48; see also *Ratliff*, 2024 IL 129356, ¶ 20 (holding a Rule 401 claim may be forfeited).

¶ 27    To salvage his claim for review, defendant maintains he established first-prong plain error. The plain-error doctrine provides a "narrow and limited exception" to the general rule of forfeiture. *People v. Jackson*, 2020 IL 124112, ¶ 81; see *Ratliff*, 2024 IL 129356, ¶ 46 (holding a Rule 401(a) violation can only be cognizable, if not preserved, as first-prong plain error). To determine whether there is plain error, we first determine whether any error occurred, bearing in mind the aforementioned standards under Rule 401. See *People v. Reese*, 2017 IL 120011, ¶ 60. For the reasons to follow, we agree with the State defendant cannot establish a lack of substantial compliance with the rule. The trial court's admonishments as to penalties were adequate to ensure defendant's waiver of counsel for the seven-month period he represented himself during the life of this four-year case.

¶ 28    The trial court, over several hearings on December 30, 2020, and February 19, 2021, informed defendant of his right to counsel, described the nature of the multiple charges, which carried significant prison time, and ascertained defendant's background, wishes, and

understanding. See *Haynes*, 174 Ill. 2d at 243; *People v. Garcia*, 2017 IL App (1st) 133398, ¶ 20. Defendant acknowledged receiving a copy of the indictment at his arraignment. He also had the pretrial bond report, and the State read into the record the probable cause finding underlying the charges. Although the court did not state the sentences could be consecutive on February 19, the court also did not inform defendant they would *not* be consecutive. See *Haynes*, 174 Ill. 2d at 243; 730 ILCS 5/5-4.5-35(g), 5-8-4(c)(1) (West 2020). Notably, there still can be substantial compliance even when the court understates the maximum prison term. *Marcum*, 2024 IL 128687, ¶ 53. Defendant does not claim he was misinformed as to the maximum sentence for the individual charges. The court accurately informed defendant the aggravated DUI charge was a Class 2 offense carrying three to seven years in prison, even though the parties and the court proceeded on the erroneous assumption this was defendant's third, rather than fourth, offense and potentially probationable. 625 ILCS 5/11-501(d)(2)(C) (West 2020); 730 ILCS 5/5-4.5-35(a) (West 2020).

¶ 29        Significantly, nothing in the record indicates defendant would have declined to proceed *pro se* if he knew the aggravated DUI was *not* probationable and the sentences could possibly be served consecutively. See *Marcum*, 2024 IL 128687, ¶¶ 53-54; *People v. Pike*, 2016 IL App (1st) 122626, ¶ 127. Further, nothing in the record suggests defendant would have received probation, given his substantial criminal record and the multiple charges lodged against him. During plea negotiations (where defendant was represented by counsel), defendant rejected the State's offer because it was "too much time." This reveals the State did not offer probation. At sentencing, the State asked for a seven-year sentence, the maximum for the aggravated DUI, based on defendant's constant disregard for the law. The trial court imposed a sentence on this charge one year above the minimum, and the sentences imposed also were concurrent. "[N]o

prejudice arises from the failure to advise a defendant of the minimum sentence he might receive where the sentence he actually receives is below the maximum sentence of which he has been advised." *Pike*, 2016 IL App (1st) 122626, ¶ 122; but see *People v. McKee*, 2022 IL App (2d) 210624, ¶ 35 (requiring Rule 401 admonishments as to a possible sentence even if not imposed). Given the total facts, plus defendant's educational level and familiarity with the criminal justice system, the Rule 401 admonishments were substantially compliant, the waiver was knowing and intelligent, and regardless, defendant cannot show prejudice. See *People v. Wright*, 2017 IL 119561, ¶¶ 53-57; *Haynes*, 174 Ill. 2d at 243-45.

¶ 30 Defendant nonetheless argues the Rule 401 admonishments were fatally defective in two instances: first, before arguing his *pro se* motion to reduce bond in December 2020, and second, before arguing his *pro se* pretrial motions in January 2021 and 2024. He maintains these were critical stages because they implicated his constitutional rights and affected his trial. See *People v. Lindsey*, 201 Ill. 2d 45, 56 (2002) (finding any proceeding where a defendant asserts or waives constitutional rights may be deemed "critical"); *People v. Bonner*, 37 Ill. 2d 553, 558 (1967) (holding a proceeding is critical when events transpire which are likely to prejudice a defendant's subsequent trial); *People v. Allen*, 220 Ill. App. 3d 772, 781 (1991) (affirming the right to counsel applies to all critical stages of the prosecution).

¶ 31 As to the bond reduction hearing in December 2020, although the trial court ascertained defendant's background and understanding about proceeding *pro se*, defendant correctly observes the court failed to orally announce the charges and their associated sentences, instead doing so in February 2021. Defendant nevertheless had just been arraigned and received a copy of the charges. Before argument at the hearing, he also had the opportunity to review his pretrial services bond report, which listed the charges against him. Although then lacking the

sentencing ranges, as set forth, defendant has not established any prejudice resulted. His first argument fails.

¶ 32        Regarding defendant's second argument, we observe, on February 19, 2021, defendant was admonished before proceeding *pro se* on his pretrial motions to dismiss, but the trial court did not make any ruling on those motions. About three months later, on May 19, the date these motions were to be heard, defendant hired counsel. Over some 2½ years, defendant cycled through two different private attorneys, who ultimately withdrew due to irreconcilable differences with him. Neither proceeded on his *pro se* motions. Defendant then resumed his *pro se* status on October 25, 2023. He represented himself at the January 12, 2024, pretrial hearing, arguing his motions, all filed in 2021, including the motion to dismiss and another based on the charges. The court denied the motions and, just after, appointed defendant counsel at his request. See *People v. Burton*, 184 Ill. 2d 1, 23 (1998) (noting a *pro se* defendant may later acquiesce to counsel). Newly appointed counsel did not seek a reconsideration of defendant's *pro se* motions or argue them posttrial.

¶ 33        Defendant does not persuasively argue any of these motions were dispositive or he was later prejudiced by the evidence and argument presented *pro se*. Moreover, defendant's self-representation was sandwiched between periods during which he was represented by counsel. Defendant concedes knowing he was entitled to legal representation. See *Haynes*, 174 Ill. 2d at 244. He had counsel at critical stages of his case, including during his initial bond hearing, pretrial, plea negotiations, trial, and posttrial. See *People v. Maxey*, 2018 IL App (1st) 130698-B, ¶ 59 (holding inaccurate admonishment regarding Class X sentence immaterial under Rule 401 where counsel represented the defendant for a period before trial, during trial, and posttrial, and waiver was knowing, voluntary, and lacking prejudice); *Garcia*, 2017 IL App (1st)

133398, ¶ 20 (finding no prejudice on an uncounseled pretrial motion, where counsel represented the defendant at trial, sentencing, and posttrial). Defendant does not dispute knowing he had multiple prior DUIs, leading to an aggravated charge. With the aid of counsel, defendant was responsible for understanding his own criminal background. Notably, defendant does not claim his pretrial or trial attorneys were constitutionally ineffective. See *People v. Yankaway*, 2025 IL 130207, ¶¶ 61-62.

¶ 34        Defendant further argues the trial court needed to specifically *re-admonish* him on October 25, 2023. Generally, an intelligent and knowing waiver of counsel applies to all trial phases unless circumstances significantly change or the defendant later requests counsel. *Marcum*, 2024 IL 128687, ¶ 56; *People v. Ware*, 407 Ill. App. 3d 315, 342 (2011).

¶ 35        Here, as set forth, defendant resumed his *pro se* status in October 2023 after having had private counsel for some 2½ years. He continued right where he had left off, by presenting his *pro se* motions. Notwithstanding the interlude with private counsel, defendant has not identified any significantly changed circumstances necessitating re-admonishment under Rule 401. See *Marcum*, 2024 IL 128687, ¶¶ 57-58. A trial court's failure to admonish a defendant contemporaneously with his waiver is not always fatal to the validity of a waiver of counsel. *Haynes*, 174 Ill. 2d at 242. In this instance, the stage of proceedings was the same: pretrial. See *Ware*, 407 Ill. App. 3d at 347-48. Nothing indicates defendant would have chosen counsel in October 2023 had he been re-admonished under Rule 401. See *id.* at 348. He was unequivocal in his desire to proceed *pro se* and adamant in pursuing his earlier-filed motions. Defendant cited law and was articulate in arguing the motions, even if they were not persuasive. Defendant's experience with the criminal justice system and consistent collection of DUIs also indicates re-admonishment was not vital. See *People v. Ware*, 2020 IL App (4th) 180138-U,

¶¶ 14, 28, 31. Accordingly, defendant cannot establish prejudice, and neither the lapse in time nor the interlude with counsel negated the effectiveness of defendant's earlier admonishments. See *Haynes*, 174 Ill. 2d at 242, 245; *Pike*, 2016 IL App (1st) 122626, ¶ 118.

¶ 36 Based on our review of the entire record and its unique facts, defendant cannot establish any error. See *Marcum*, 2024 IL 128687, ¶ 46. Even assuming any error, we would find no plain error because the evidence in this case was not closely balanced. Three officers collectively testified defendant was driving while intoxicated with minor children in the back of the vehicle, and the State submitted videos of the scene. See *People v. Jophlin*, 2018 IL App (4th) 150802, ¶ 48 (finding circumstantial evidence may prove a defendant committed DUI). Defendant all but admitted his intoxication to officers. See *People v. Castino*, 2019 IL App (2d) 170298, ¶ 19. Evidence also established defendant was driving the wrong way down a one-way road and on a revoked license. Defendant did not offer any evidence to the contrary. Defendant failed to establish any prejudice (*i.e.*, any error would be dispositive) and has not fulfilled his burden, as required. See *Sebby*, 2017 IL 119445, ¶¶ 51, 68. While defendant also argues we must instead analyze the closely balanced nature of the *pretrial* evidence, as the State notes, defendant offers no legal support for this claim, and we find none. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (an appellant's contentions must contain citation to legal authority).

¶ 37 Last, defendant raises a constitutional claim, which is indistinguishable from his claim based on Rule 401. Having disposed of the matter on nonconstitutional grounds, we need not entertain defendant's arguments further. See *People v. Bass*, 2021 IL 125434, ¶ 30 ("[C]ourts must avoid reaching constitutional issues unless necessary to decide a case."). Regardless, as he did not raise this constitutional argument below, it is forfeited, and for the reasons already stated, he cannot avoid his forfeiture under the plain-error doctrine. See *People v. Smith*, 2025 IL App

(4th) 240512-U, ¶ 24 (rejecting the defendant's similar structural error argument).

¶ 38                                    III. CONCLUSION

¶ 39            For the reasons stated, we affirm the judgment of the trial court.

¶ 40            Affirmed.